**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RC SMITHFIELD, LLC,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 24-4057
(D.C. No. 1:21-CV-00090-JNP)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **EID**, and **CARSON**, Circuit Judges.
_____

Real property has both a legal owner and a beneficial owner. The legal owner appears to be the obvious owner of the property for the simple reason that his name appears on the deed. The beneficial owner's name, however, may not appear on the deed, yet he has the benefits of ownership—use, occupancy, and profits to name a few. Often, the same person has both legal title and beneficial title. But that's not always the case. Sometimes, when the legal owner buys the property using funds from the beneficial owner and the beneficial owner then receives the benefits of ownership, the legal owner has created a resulting trust in favor of the beneficial

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

owner. Thus, a legal owner may find that the IRS attached a federal tax lien to the property when the beneficial owner owes federal tax.

Plaintiff holds legal title to certain property in Utah a now-defunct construction company partially paid for. The government filed notices of tax liens on the property, and Plaintiff sued to quiet title. The district court held that, despite having legal title to the parcels at issue, Plaintiff holds the parcels, at least in part, for the benefit of the defunct construction company and ruled for the government. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I.

Sidney Crookston ("Sid") owned the now-defunct Sid Crookston Construction ("SCC"), which operated from 2009 to 2016. Because of SCC's failure to fully pay federal taxes, the IRS assessed SCC and sought to enforce the assessment by placing notices of lien upon properties in which it believed SCC owned an interest.

The IRS claimed a lien upon two parcels of land located in Cache County, Utah. Sid, in his individual capacity, signed a real estate purchase contract for the two parcels in March 2016. But Sid did not pay the earnest-money himself. Instead, the same day, Sid's wife, Julie Crookston, signed a $5,000 check drawing on SCC's account to pay the earnest-money for the parcels. Ultimately, because of financial difficulties, Sid needed a partner to complete the purchase of the lots—so he contacted Scott Richins. According to Richins, Sid asked him to partner with Sid's son, Aldon Crookston ("Aldon"), to buy the parcels.

2

In April 2016, the IRS notified SCC that it owed unpaid federal taxes, penalties, and interest. Around that same time, Richins and Aldon formed a limited liability company—Plaintiff, RC Smithfield, LLC. Nine days after the IRS sent the notice to SCC, Sid signed an addendum to the purchase contract, changing the buyer from himself to Plaintiff. Plaintiff bought the parcels in May 2016. After Plaintiff bought the parcels, Aldon and Richins were each responsible for half of the payments. SCC wrote a check for Aldon's first payment. Richins made Aldon's second purchase payment. ACI Construction—SCC's successor-in-interest— reimbursed Richins for Aldon's share.

Because Richins had trouble securing Aldon's payments for half of the property taxes, Richins contacted Sid. After contacting Sid, ACI Construction began paying fifty percent of the property taxes for the parcels. Sid continued his individual involvement with the parcels. Specifically: (1) Sid participated in a meeting regarding the future of the parcels; (2) the combination to the lock on the property was set to Sid's preferred lock combination; (3) Sid visited the parcels with Richins more than Aldon; (4) Richins contacted Sid frequently to ensure that Sid's company, ACI Construction, paid Aldon's share of the property taxes; (5) Richins emailed ACI Construction to ask that it pay its half of the property taxes on the parcels; (6) Richins' accountant remarked, "Sid should let you take care of the paperwork" when the 2017 property taxes were late; (7) Sid's company, ACI Construction, dumped garbage from its construction sites on the parcels; (8) no one presented evidence that anyone used the parcels for any other purpose than for

investment and to dump garbage; and (9) Richins suggested that ACI Construction "short pay" an invoice for a project Sid and Aldon worked on for one of Richins' companies to effectively reimburse Richins for covering Aldon's half of the property tax payments.

SCC stopped operating in June 2016 because of unpaid taxes and an outstanding judgment. That same month, Sid filed for personal bankruptcy.

The IRS assigned an agent to collect SCC's unpaid employment, unemployment, heavy highway usage, and corporate taxes. The IRS recorded Notices of Federal Tax Liens against Julianne Crookston as a nominee of SCC, against ACI Construction as a successor-in-interest of SCC, and against Plaintiff as a nominee of SCC. In August 2018, the IRS recorded with Cache County the Notice of Federal Tax Lien against Plaintiff as nominee of SCC to the extent of Aldon's interest in the parcels. Chris Crookston—Sid's other son—wrote on an IRS form and signed under penalty of perjury that the parcels were an asset of ACI Construction.

Plaintiff filed this civil action in the United States District Court for the District of Utah seeking quiet title to real property by challenging the validity of the federal tax liens. The district court held a bench trial. It found that Sid, Aldon, and Chris Crookston were not credible witnesses. The district court described Sid, Chris, and Aldon's testimonies as reflecting selective memories and being inconsistent with each other, prior testimony, evidence in the record, and the testimony of disinterested parties. The district court concluded that the money SCC and ACI Construction paid towards the parcels was not for wages, bonuses, or other compensation, gifts, or

4

loans to Aldon. The district court analyzed SCC's interest in the parcels under a resulting trust theory, a constructive trust theory, and a nominee doctrine theory. The district court found for the government on all three theories. After concluding that SCC beneficially owned the parcels under Utah law, the district court applied federal law and concluded that the federal tax liens could attach to the beneficial interests SCC held in the parcels. The district court thus found for the government on Plaintiff's quiet-title claim, holding that the federal tax liens validly encumbered the parcels

Plaintiff timely appealed.

## II.

Our well-settled case law sets forth the legal framework for enforcing federal tax liens. "[T]he IRS may satisfy a tax deficiency by imposing a lien on any property or rights to property belonging to the taxpayer." United States v. Tingey, 716 F.3d 1295, 1300 (10th Cir. 2013) (quoting Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007)). "The property may be 'not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee of the delinquent taxpayer.'" Id. (quoting Holman, 505 F.3d at 1065). To determine whether a "third party holds the property as a nominee," we examine whether "the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership." Id. (quoting Holman, 505 F.3d at 1065). That inquiry proceeds in two steps.

5

First, we look "to state law to determine what rights the taxpayer has in the property the Government seeks to reach." Id. (quoting Drye v. United States, 528 U.S. 49, 58 (1999)). Second, we "'determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property"' under federal tax law." Id. (quoting Drye, 528 U.S. at 58). Applying this framework, the district court determined that, under Utah law, SCC had property rights in the parcels under three theories: a general nominee theory, a resulting trust theory, and a constructive trust theory. It then held that SCC's rights in the parcels qualified under federal tax law and thus the tax liens were valid, a holding Plaintiff does not challenge on appeal.

Plaintiff raises two challenges to the district court's ruling. First it challenges the district court's ruling that SCC had any property rights in the parcels. In support of this argument, Plaintiff argues that the district court improperly disregarded its limited-liability-company status and erred in finding the SCC held an interest under the resulting trust, constructive trust, and nominee theories. Second, Defendant challenges the district court's ruling that the language of the liens was irrelevant to their validity. We address each issue in turn, reviewing the district court's legal conclusions de novo. Holman, 505 F.3d at 1065. Plaintiff does not challenge the district court's factual findings.

A.

We begin with the district court's determination that SCC held an interest in the parcels under a resulting trust theory. For resulting trusts, Utah law follows the Restatement (Second) of Trusts. In re Hock's Est., 655 P.2d 1111, 1115 (Utah 1982).

6

Thus, "[w]here a transfer of properties is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid . . . ." Id. (quoting Restatement (Second) of Trusts § 440 (1959)). The crucial fact for a resulting trust: "one party paid the purchase price for property and another party was given legal title." Id. This is so unless the party who paid the purchase price manifested intent that no resulting trust should arise. See Restatement (Second) of Trusts § 441. The proof required to impose a resulting trust "must be strong, clear, and convincing, such as to leave no doubt of the existence of the trust . . . ." In re Taylor, 133 F.3d 1336, 1341 (10th Cir. 1998) (quoting Chambers v. Emery, 45 P. 192, 195 (Utah 1896)). And that intention regarding the beneficial interest must have been at the time of the transfer. Id. (citing Restatement (Second) of Trusts § 443 cmt. a).

Following the bench trial, the district court found that SCC (together with its successor-in-interest, ACI Construction) paid half of the purchase price for the parcels (Richins paid the other half). It also found that Plaintiff took legal title to the parcels. It found no evidence that SCC manifested any intent that no resulting trust should arise. In fact, it found that SCC demonstrated intent to maintain a beneficial interest in the parcels by Sid being involved with the parcels after the purchase and by ACI using the parcels as a dumping ground, thereby exercising dominion and control of the parcels. Based on these findings, the court determined that a resulting trust arose in SCC's favor such that the government could impose liens on SCC's interest in the parcels.

7

On appeal, Plaintiff argues that no resulting trust could arise because the exchange was not a gratuitous transfer. According to Plaintiff, it received the funds to purchase the parcels, and, in exchange, it issued Aldon a membership interest in the limited liability company. But Plaintiff argued the opposite to the district court. There, Plaintiff argued that Sid intended to gift SCC's interest in the parcels to Aldon—an argument the district court rejected. Moreover, Plaintiff's argument conflicts with the evidence, which supports the district court's findings. SCC wrote two checks for the parcels signed by Julie Crookston. Those checks covered the deposit and the first payment. SCC's successor then paid the second installment by writing Richins a check to reimburse him for paying Aldon's second installment. SCC did not write these checks to Plaintiff or Aldon. And no evidence in the record shows that Aldon or Plaintiff reimbursed SCC or ACI Construction for these payments. The evidence simply does not support Plaintiff's argument that an exchange of value occurred between Plaintiff, the legal title holder, and SCC, the beneficial title holder. The evidence before the district court was "strong, clear, and convincing" and "leave[s] no doubt" as to the existence of a resulting trust. See id. (quoting Chambers, 45 P. at 195).

Plaintiff also argues that the district court disregarded Plaintiff's corporate form and improperly "looked through" the limited liability company to its members. Plaintiff contends that the government asks us to nullify Utah law on limited liability companies. We disagree.

8

In making this argument, Plaintiff misunderstands the concept of beneficial title. Plaintiff's argument assumes that the district court pierced the corporate veil to reach the property of one of its members. But the district court did not pierce the corporate veil to satisfy the debt of one of Plaintiff's members. The IRS is not taking Aldon's interest (assuming he has any) in the LLC but is, instead, attaching a lien to SCC's beneficial interest in the parcels. Whether Plaintiff is a limited liability company makes no difference to the analysis. Plaintiff undisputedly is the *legal* owner of the parcels. SCC, however, is a *beneficial* owner of the parcels because SCC paid for half of the parcels. Had Aldon, or any other individual for that matter, been the legal owner of the parcels rather than a limited liability company, Sid's, Aldon's, and SCC's conduct would still create a resulting trust with SCC as the beneficial owner of a portion of the parcels.[1]

B.

Plaintiff labels the last section of its argument "The Language of the Filed Liens Determines Their Validity." The entire section consists of two paragraphs. The first asserts our review is de novo. The second cites one case for the proposition that the purpose of a federal quiet title action is to remove a specific, particularly described, cloud upon a plaintiff's property. Plaintiff further argues that the IRS liens are the only filings that put third parties on notice of the encumbrance on its

---

[1] Because we conclude that a resulting trust exists and that SCC holds a portion of the parcels as a beneficial owner, we need not address Plaintiff's arguments regarding a constructive trust and a general nominee theory.

9

parcels and prevents Plaintiff from transferring marketable title.  Plaintiff contends that the district court erred in holding "that the language of the actually filed Liens was not relevant to their validity."

We conclude Plaintiff inadequately briefed this argument.  The portion of the district court's findings of fact and conclusions of law addressing the relevancy of the language of the liens focused on the district court's standard of review.  Plaintiff's one-paragraph argument in its opening brief does not squarely address the district court's opinion.  And its summary treatment of the issue in the opening brief fails to convince us that the district court erred.  Because Plaintiff did not adequately develop this issue in its opening brief, it has effectively waived it.  See United States v. Cooper, 654 F.3d 1104, 1128 (10th Cir. 2011) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998)).

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

10